# SUPREME COURT

# SPECIAL TERM REPORTS.

## VOL. 3.  NO. 6.

### IN EQUITY.

DAVID SCOUTON vs. JACOB BENDER and JOHN BENDER.

FARNS CROUSE et al. vs. THE SAME.

DANIEL GATES vs. THE SAME.

JOSHUA V. H. CLARKE vs. THE SAME.

Where creditors' bills were filed in several causes against a judgment debtor to set aside as fraudulent, an assignment made by the debtor, of all his real and personal estate, and to compel the satisfaction of the judgments out of the equitable interests, &c. of the judgment debtor; and the assignment was declared fraudulent and void as to creditors, and was decreed to be set aside, with directions to the receiver to convert the real and personal estate assigned to him into money, for the purpose of satisfying the complainants; *Held*—on a motion that the court prescribe a rule for the distribution of the funds received, as proceeds of the personal and real estate in the hands of the receiver, there being insufficient to satisfy the whole—*that the creditors were entitled to satisfaction of their judgments respectively, out of the funds derived from the real estate in the order of priority of their judgments ; and out of the personal fund in the order in which the bills were filed and the equitable liens created.*

A judgment creditor having a *prior* outstanding judgment against such judgment debtor, and who is not made a party to any of the creditors' bills filed, and is not a party to the motion for distribution, cannot be paid out of the fund in court. The sale of the real estate under the decree of this court does not subvert the lien of his judgment. The general scope and object of a creditors' bill stated, per GRIDLEY, Justice.

The assignee in the assignment decreed fraudulent, having advanced money on an outstanding mortgage to relieve the real estate conveyed to him in trust, it was directed that he be reimbursed such amount out of the proceeds of the land in the hands of the receiver.

The party who obtained the first judgment having filed the first bill, was entitled to be first paid, having the oldest lien on both funds; and the personal fund was directed to be first applied to such lien.

The creditors who had an interest to have this lien paid out of the real, instead of the personal fund, should have shown *superior equity* to the other creditors who had an interest to have it paid out out of the personal fund, in order to change the destination of such fund, under the general rule that personal property should be first applied to the payment of debts.

## ONONDAGA. GENERAL TERM.

G. F. COMSTOCK, *for Complainants, Scouton and Gates.*
NOXON & VAN SCHAACK, *for Farns Crouse and others.*
EDWARDS & SEDGWICK, *for J. V. H. Clarke.*
J. G. STOWER, *for the Receiver.*

By the Court, GRIDLEY, Justice.—Creditors' bills were filed in each of the above entitled causes to set aside as fraudulent an assignment executed by Jacob to John Bender, of all the real and personal estate of the former, and to compel the satisfaction of the judgments on which the bills were respectively filed, out of the equitable interests, &c. of the judgment debtor. In the first of these causes the assignment was declared fraudulent and void as to creditors, and was decreed to be set aside, with directions to the receiver to convert the real and personal property assigned to him by the debtor, into money for the purpose of satisfying the judgment of the complainant. There was also a provision in the decree for the reimbursement of John Bender for an advance made by him on an outstanding mortgage to relieve the real estate conveyed to him in trust, by the assignment. In the other suits (which by stipulations were made to abide the decision in this) similar decrees have been entered by consent. The receiver has paid nearly the whole of the Scouton decree out of funds in his hands, derived mainly from the personal estate. It does not appear by the papers whether he in fact paid out any part of the avails of the real estate. He had in his hands at the time of such payment $350, received by him as overplus money on a mortgage sale of a part of the lands assigned to him, and $1350 realized from the sale of the personal estate. He has since sold the residue of the real estate and received therefor the sum of $1200. The bills were filed in the order in which the suits are entered and entitled upon the affidavits used upon the motion, but the judgments did not become liens on the real estate of the debtor in the same order in which the bills were filed. It is also made to appear that one Bloss recovered judgment against the common debtor prior in date to any other judgment mentioned in the papers, upon which no sale has taken place, nor any bill been filed. Upon this state of facts we are called upon to prescribe a rule for the distribution of the fund in the hands of the receiver, the amount being insufficient to satisfy all of the claimants.

*First.* As to the outstanding judgment of Bloss. We cannot direct this judgment to be paid out of the fund in court for several reasons. He is not a party to this motion, and it is possible that his judgment has been paid in whole or in part, or has been otherwise secured. Again, he was not made a party to any of the creditors' bills which have been filed against judgment debtor, and therefore, the sale of the real estate under the decree of this court, has not subverted the lien of his judgment, nor in any manner affected his rights under it. It is not within the scope and object of a creditor's bill, properly so called, to direct a sale of the real estate of a judgment debtor. Its object is to compel the " discovery of any property or thing in action belonging to the Defendant and to prevent the transfer of such property ;" and the court is authorized by the statute to compel such discovery, to prevent such transfer, and " to decree satisfaction of the judgment out of any *personal property, money or things in action* belonging to the Defendant, or held in trust for him." The term " land," or " real estate " is not found in the act—(2 R. S. 174, Sec. 38, 39.) When, however, there is any impediment, such as a fraudulent conveyance, interposed to prevent the collection of a debt, so as to give the party a right to invoke the jurisdiction of the Court of Chancery in aid of an execution at law, it is allowable to embrace this ground for relief, also in a creditor's bill. The legitimate relief upon such a bill, so far as the real estate is concerned, is attained when the unlawful obstruction is removed, and the creditor is thus enabled to obtain satisfaction of his judgment by a sale under an execution at law. The provisions of the R. S. already adverted to, were merely declaratory of the powers which the Court of Chancery possessed and had exercised before their enactment. (2 J. Ch. Rep. 283 ; 4th id. 671, 682, 687, 619 ; 20 J. Rep. 554.)

We do not doubt, however, that the court may in some cases lawfully direct a sale of the real estate of a judgment debtor, and that in many instances it is the most advisable course to be pursued. When the judgment debtor has assigned to a receiver his *real* as well as personal estate, for the benefit of the prosecuting creditor, and the court has removed the fraudulent deed which covered it, and when all the parties, who have acquired any lien upon it are before the court; we can see no objection to a sale by the receiver, and a distribution of the proceeds among the creditors according to the priority of their liens. The Court of Chancery having obtained jurisdiction of the cause and the subject-matter of it, for one purpose, may retain it in order to do full and complete justice to all the parties to the suit. Such a sale, however, cannot affect the rights of a senior judgment creditor. He has not lost the lien of his judgment; no

decree of a Court of Chancery can overreach it. He may issue his execution and sell the interest of the judgment debtor as it existed when his lien attached, and that sale will overthrow and subvert all titles derived under judgments or decrees of a junior date. It follows, therefore, that the purchaser at the receiver's sale acquired a title subject to the judgment of Bloss, if the same is outstanding and unpaid.

*Secondly.* The sum which the decree directs to be repaid to John Bender, having been advanced to relieve the real estate, should, we think, be reimbursed to him out of the proceeds of the land in the hands of the receiver.

*Thirdly.* Scouton obtained the earliest judgment, and filed the first bill, and is therefore entitled to be first paid. He has the oldest lien both on the fund derived from the real and personal estate; and it is therefore immaterial to him whether he is paid out of one or the other. So far as the payment has actually been made, it must have been made out of the avails of the personal estate, except as to the sum of $350; for the receiver had no other in his hands, and we think he should be paid in full out of the same fund. It is the *general rule* that the personal property should be first applied to the payment of debts, and the real estate is not to be so appropriated till the personalty is exhausted—(5 John. Ch. Rep. 235.) It is true that where *one* creditor has a lien on *two funds*, a Court of Equity will direct a satisfaction out of *that* which will relieve another creditor who has a lien on only one. But here are two classes of creditors; the one class having an interest to throw the complainant in the first suit upon the personal fund, and the other upon the real fund, and the latter class show no superior equities over the other to induce us to change the destination of the funds, as the same would be established, without reference to the equities of third persons.

*Fourthly.* There is no doubt that the creditor who first files a creditor's bill, obtains a prior equitable lien on the personal estate of the debtor, and is therefore entitled to be first satisfied out of the proceeds of the personal estate. This rule therefore will control the distribution of the funds arising out of the sale of the personal property, and effects of the judgment debtor. The equitable lien, however, which is thus acquired, is subject to any valid lien created by a personal mortgage, execution levied or otherwise, which may happen to exist, in favor of any other creditor at the time of the service of the subpoena and injunction. In just the same manner is this equitable lien subject to a prior legal lien by judgment upon the real estate. We have already seen that such a lien held by a stranger, is neither subverted nor affected by a sale of the premises under a decree

founded upon a junior judgment. In this case, however, the claimants have all consented to the sale of the lands by the receiver, and must assert their liens by way of a prior right to the *fund in court*, or not at all. Their rights are not changed by the conversion of the land into money. By a familiar principle of equity, the money is to be regarded *as land* for the purpose of an equitable distribution of the fund. Neither can the maxim, that "*equality is equity*," deprive the judgment creditor of the benefit of his prior legal lien. The latter *existed* when the equitable lien was acquired, and that *lien* was subject to the prior and superior lien of the judgment, which is therefore entitled to a preference in the distribution of the funds arising out of the real estate of the debtor. (See 4 Paige, 32.)

The conclusion therefore is, that the creditors will be entitled to a satisfaction of their judgments respectively, out of the fund derived from the real estate in the order of priority of their judgments; and out of the personal fund in the order in which the bills are filed, and the equitable liens created.