RANKIN, Respondent, v. HARPER *et al.*, Appellants.

1. A father purchased land in the name of his son with intent to defraud his creditors; *held*, 1st, that the contemplated fraud upon creditors repelled the presumption of an advancement to the child; that consequently there was a resulting trust to the father for the benefit of his creditors; 2d, that *this interest in the father was subject to seizure and sale on execution* under judgments in favor of such creditors.
2. A defendant can not be a witness for his co-defendant.
3. Where, upon the polling of a jury, eleven assent to the verdict, and one juror, in answer to the question of the clerk, "is this your verdict?" answers as follows: "It is, as far as it goes;" *held*, this answer does not invalidate the verdict.
4. A. having purchased a tract of land, it was conveyed to a son of A. with intent to defraud the creditors of A.; *held*, in a suit to annul this deed in behalf of one of those creditors who had purchased the land at a sale on execution under a judgment in his favor against A., that *evidence was inadmissible to show*, in behalf of defendants, the pecuniary circumstances of A. several years after the conveyance to his son.

*Appeal from St. Louis Land Court.*

The petition of the plaintiff, Harper, sets forth substantially that plaintiff is entitled to the possession of the land in controversy; that one Otis West, under whom plaintiff claims, purchased the same at a sheriff's sale on execution under a judgment against Daniel Harper, one of the defendants, and received the sheriff's deed therefor dated May 15, 1846; that defendants have been in unlawful possession of said premises since May 15th, 1846; that "in the year 1839, the said Daniel Harper was largely indebted, and was in fact insolvent;

and that at said time he was indebted to Josiah Pope and Otis West in about the sum of $300; that in said year 1839, said Daniel Harper purchased the tract of ground above described and paid for the same; that the said Daniel Harper, with the intent and for the purpose of defrauding, hindering and delaying his creditors, procured a deed to be made to the said Orrin Harper, a son of the said Daniel Harper, then a boy not over the age of eight years; that said Daniel Harper refused to permit the deed to be made to himself, though he paid the purchase money; a part of which purchase money, so paid for said ground, was received by said Harper for and on account of the goods and merchandize purchased by the said Daniel Harper of the said Pope & West in year 1837, and which was never paid for by said Daniel Harper up to the time of the sale of the above described tract of ground to said West in the year 1846. Plaintiff states that said conveyance to Orrin Harper, made as aforesaid for the purpose of hindering and delaying the creditors of the said Daniel Harper, was and is clearly and utterly void. Plaintiff asks judgment for the recovery of the above described premises, for the rent of the same for five years next preceding the filing of this petition, together with damages and costs. Plaintiff further asks that said conveyance to Orrin Harper be declared void, and that the said defendants be compelled to convey said premises to said plaintiff, or that the court will do it for them; and for such other and further relief as the said plaintiff may be entitled to in the premises."

Daniel Harper answered, denying the fraud in the petition. Orrin Harper answered by a guardian *ad litem* in the common form, submitting the rights of the infant to the protection of the court.

The evidence introduced tended to prove the truth of the facts charged in the petition. It appeared that Josiah Pope and Otis West, of the firm of Pope & West, in the year 1844, recovered a judgment for $317 81 against Daniel Harper upon an indebtedness which had accrued in their favor previously to the purchase of the land in controversy by Daniel Harper, and

Rankin v. Harper.

the conveyance to his minor son Orrin Harper; that execution issued February 9th, 1846, and was levied upon the land in controversy in April, 1846, to pay an unsatisfied balance; that Otis West became the purchaser at the sheriff's sale, and received the sheriff's deed therefor dated May 16, 1846. Defendants offered to prove the state of Daniel Harper's pecuniary circumstances in the year 1842 and later. The court excluded the testimony. Plaintiff in reply introduced in evidence the sheriff's return on the execution against Harper dated February 9, 1846, to the effect that " no goods and chattels of Harper were found out of which to make the balance of the execution." Defendants then again offered to prove that, during the whole time of the life of the execution, said Harper was the visible and known proprietor of a large amount of personal property subject to execution, more than sufficient to satisfy the same. The court excluded the testimony. Daniel Harper was offered as a witness for his co-defendant, Orrin Harper, but was rejected by the court.

The court, on the motion of plaintiff, gave the following instructions : " 1. If the jury find from the evidence, that, at the time of the purchase of the lot described in plaintiff's petition by Daniel Harper, said Harper was indebted to Pope & West; that said Harper paid the purchase money for said lot, and caused said lot to be conveyed to said Orrin Harper, with the intent or for the purpose of hindering, delaying, or defrauding his creditors,—they will find the issue for the plaintiffs. 2. If the jury find the issues (declared to them by the court) for the defendant, they ought to say so in their verdict, and need say no more. If they find the said issues for the plaintiff, they ought also to assess damages for the detention of the land, and declare the monthly value of the land."

The defendants moved the court to give the following instructions : " 1. If Harper, the father, at the time of the purchase of his son, was solvent, and did not intend by such purchase to cheat or defraud his creditors, then the son, by the purchase and deed to him, acquired the title to the land, and

the plaintiff can not recover. 2. If Harper had, at the time of the levy and sale on execution, property other than the land now in dispute sufficient to satisfy said execution, and which was openly and notoriously held by him, then Otis West, one of the judgment creditors, did not acquire any title to the land in dispute by the sheriff's deed. 3. The sheriff's deed read in evidence to Otis West was inoperative and void, and passed no title." The court refused to instruct the jury as requested by defendants. Exceptions were duly taken.

The jury found for the plaintiff, and assigned his monthly damages "at the sum of fifty cents per month for the time said plaintiff was kept from possession of the premises." Upon the return of the jury with a written verdict, on the motion of defendants, the jury was polled. Eleven of the jurors assented to the verdict. One juror, in answer to the question of the clerk, "is this your verdict?" said "it is, as far as it goes." The defendants objected to the reception of the verdict. The court ordered the verdict to be received as the unanimous finding of the jury.

The court, by its own decree, annulled the conveyance of May 10, 1839, to Orrin Harper, and vested all the right, title and interest of the defendants, Daniel and Orrin Harper, in and to the tract of land in controversy, in the plaintiff, Harper; and ordered "that plaintiff recover of said defendants the monthly damages aforesaid, in form aforesaid as assessed, together with costs," &c. Defendants appealed to this court.

*R. M. Field*, for appellants.

I. In the most favorable aspect of the case for the plaintiff, the defendant Daniel Harper made a fraudulent purchase for his son. It is conceded that a court of equity would, in favor of a creditor, raise out of the property purchased the money advanced by the father. But the father had no estate or interest in the land to be sold on execution. (R. C. 1845, p. 478.) There is no resulting trust in favor of a parent purchasing in the name of a child. (2 Sudg. on Vend. 145; Matthews' Presump. Ev. 61; 2 Johns. Ch. 405; 17 Eng. Ch. R. 447.) The

statute against fraudulent conveyances only avoids fraudulent sales in favor of creditors of the grantor. (R. C. 1845, p. 525.) To apply the statute to the present case would manifestly defeat the object of the plaintiff; for, if the deed from Daniels to Orrin Harper were void, then the title to the land in controversy still remained in Daniels, and the plaintiff could not recover. That a fraudulent purchase is not within the statute against fraudulent conveyances appears from the following authorities : Roberts on Fraudulent Conveyances, 463 ; 1 Yerg. 79 ; 7 Yerg. 155 ; Gowing v. Rich, 1 Iredell, 553.

II. The court below erred in excluding Daniel Harper as a witness on behalf of his co-defendant. The father, though a formal party on the record, had really no interest in the controversy. He claimed no estate in the land. It was indifferent to him whether the land was adjudged to his creditor or his son. The suit was equitable in its character, and the present question must be judged by the rules prevailing in courts of equity. The established rule in equity is, that a defendant having no interest is a competent witness. (McDonald v. Neilson, 2 Cow. 133 ; Kirk v. Hodgson, 2 Johns. Ch. 550 ; Rutter v. Elliot, 15 Conn. 187 ; Ridgway v. Newbold, 1 Harring. 385 ; 1 Bland, 508 ; 2 McCord's Ch. 185, 205 ; 1 Jones' Eq. 24 ; 5 Paige, 633 ; 1 Green's Ch. 321.) The new practice act has not changed the rule. (1 Code Rep. 123 ; id. 113 ; 9 How. P. R. 385.) Nor is it material that the witness might have been subjected to costs. (Burns v. Taylor, 23 Ala. 255.) Nor under the practice here was any previous order necessary. (Black. v. Chase, 15 Mo. 344.)

III. The court below erred in excluding the testimony offered as to Daniel Harper's pecuniary circumstances subsequent to the conveyance by Daniels, for it was material to be considered in an inquiry into his intentions in procuring the conveyance to his son. When the plaintiff was permitted to read to the jury the sheriff's return of *nulla bona* to prove that the defendant had no property subject to execution in 1846, the defendants should have been allowed to show the contrary.

IV. The court below erred in receiving the verdict after one of the jury declared that he assented to it only " as far as it went." That juror gave to his assent a qualification, that he must have regarded as material, or he would not have mentioned it. (5 Burr. 266.) So too, the verdict is void as not finding all in issue; for the damages are not found in a manner that any verdict can be rendered. (1 Grah. & Wat. on New Trials, 140 and cases cited.)

V. The judgment is repugnant, contradictory and void. It declares the deed from Daniels to be void, and then conveys all the right, title and interest of the defendants to the plaintiff. In other words, the judgment annuls all the title of the defendants, and then transfers this annulled title to the plaintiff.

VI. The judgment is erroneous in awarding damages at a rate per month for a term not fixed and not ascertainable.

*Knox & Kellogg*, for respondent.

I. Daniel Harper was not a competent witness for his co-defendant. (19 Mo. 263 ; 17 Mo. 367.)

II. The sale and deed by the sheriff to Otis West were sufficient to vest the title to the lot sued for in said West. (4 Mo. 116 ; 10 Mo. 34, 175, 137 ; 15 Mass. 211 ; 12 Wend. 414 ; 4 Denio, 439 ; 1 Conn. 525 ; 11 Conn. 369 ; 10 Conn. 137 ; 2 Barr, 38 ; 8 B. Mon. 566 ; 1 Johns. Ch. 582 ; 3 Eng. 83 ; R. C. 1845, ch. 67, § 2.)

III. The instructions given put the case fairly to the jury.

LEONARD, Judge, delivered the opinion of the court.

The main question in this case is, whether land, purchased in the name of a child for the purpose of defrauding creditors, is subject to sale under our execution laws; or whether, in such a case, the only remedy of creditors is to purchase the property in equity, and have it declared subject to a trust for the payment of debts. This is a new question here to some extent, although somewhat involved in the case of Howe & Wallace v. Waysman, heretofore determined in this court, (12 Mo. 169,)

and we proceed to consider it both on principle and authority, but in as brief a manner as possible.

Under the English law, legal estates only were subject to legal executions, and of course the equitable owner of land was beyond the reach of executions at law. This was remedied by the 29 Car. 2, ch. 3, § 10, which subjects to execution all real estate of the defendant which any other person holds in trust for him ; and as it was a principle of equity law, that, if one purchased land in the name of a stranger, the use resulted to the party who paid the purchase money, this resulting trust, of course, became liable to execution under the provisions of the statute. If, however, the conveyance be in the name of a wife or child, it is presumed to be a provision for the former and an advancement to the latter, and in such case, therefore, there. is no resulting trust. But it is to be observed that this presumption may be repelled by contrary proof, and then the trust results, as in the ordinary case of a purchase in the name of a stranger. And Sugden says, (2 Vend. & Pur. 171,) that if the purchase be after marriage and voluntary, it may perhaps be deemed fraudulent as against creditors in like manner as if the property actually vested in the husband. It has, however, (he continues) been strenuously argued that a purchase is not within the operation of the 13th Elizabeth, for, as the purchaser may give the money to the object of his bounty to purchase the estate for himself, he may by the same reason direct a conveyance to be made to him ; and this seems to be the better reason when the case is clear of actual fraud.

In New York, where the statute of 29th Car. 2 was in force by re-enactment, the very case here suggested of actual fraud occurred in Guthrie v. Gardiner, (19 Wend. 41,) where, in an action of ejectment, the plaintiff claimed land under a deed made to her by a stranger at the request of her husband, who paid the purchase money and directed the deed to be made to his wife for the benefit of his family, and to protect the property from his own debts, for which it was afterwards sold under execution and bought by the defendant. The court declared that

the presumption that the deed was a provision for the wife, having been rebutted by the proof of actual fraud, a resulting trust arose to the husband in favor of his creditors, and that the fee passed under the execution sale to the purchaser. The original statute was subsequently repealed in New York, and it was then provided that no use should result to the party who paid the money, but that the title should vest in the grantee, and that the conveyance should be presumed fraudulent as against existing creditors ; and that, if the presumption was not disproved, a trust should result to them to the extent which that should be necessary to satisfy their demands. (Per Brown, C. J., in Wait v. Day, 4 Denio, 442.) Under this statute, the chancellor of New York thought this land could not be sold under an execution at law, but that the creditors must go into equity to have the effect of the statute trust. The words of the statute seem to require that construction, but the Supreme Court decided otherwise, and held that the remedy of the creditors was, as before, by an execution sale, which they deemed a more direct and speedy remedy than a resort to a court of equity. (Wait v. Day, 4 Denio, 439.) Our execution law is quite as broad in its terms as the English act, and has received, practically, a more liberal construction. In its language, it extends to every interest in the land of which the party himself, or any one for his use, is seized in law or equity. Although the case of Howe & Wallace v. Waysman was that of a purchaser and not of a creditor, yet the reasoning of the court applied quite as forcibly to the latter as to the former. Our law subjects all that a man has as property to the payment of his debts, and we know of no reason why the trust, that results to him who pays the purchase money, and which can not be allowed to stand as an advancement to a child, or a provision for a wife, on account of the actual fraud, should not be allowed to result to the debtor for the benefit of his creditors, so as to afford them the speedy and easy remedy of an execution sale. It ill-becomes the parties to the fraud, after they have been detected and foiled in their attempt, to complain of the sacrifice

of property incident to such sales. These sacrifices are perhaps fully compensated for by their practical teachings, that, after all, "honesty is the best policy."

The manifest defect of our law, in refusing to allow a defendant in any suit to be a witness for his co-defendant, we can not remedy by judicial construction. It existed in the original act in New York, but was amended there at the very first session of the legislature that afterwards occurred. Our legislature, however, have not seen proper to correct what we suppose is a mere oversight, and we are not at liberty to do so.

There is nothing in the answer of the juror that ought to invalidate the verdict; nor do we think there is any thing in the exclusion of the evidence in reference to the pecuniary condition of the debtor, so long after the impeached transaction. It was not competent evidence for the defendant at first, nor did it become so after the plaintiff had put into his case the execution and return under which he derived his title to the property. This was competent proof for the plaintiff in making out his title, and he was obliged perhaps to put it in for that purpose, and the defendant can not be allowed to seize hold of this in order to get in illegal evidence, under the pretence of rebutting a fact that appeared incidentally in the sheriff's return.

The formal defects in the judgment will be amended here, and, with the consent of the plaintiff, the damages to be adjudged will be confined to those that have occurred since the judgment below. We shall accordingly reverse the judgment below and enter judgment here, vesting in the plaintiff the title acquired by the defendant, Orrin Harper, under the impeached conveyance, and for the possession of the land, and the costs of both courts. The judgment below is reversed, and the judgment here pursuant to this opinion.