EDDY, Defendant in Error, v. BALDWIN *et al.*, Plaintiffs in Error.

1. E. as surviving partner of the firm of B. & E., recovered a judgment against C. for money embezzled by him while a clerk for B. & E. from the year 1841 to 1848; an execution was issued under this judgment, and levied upon a lot that had been, in May, 1844, conveyed to one D. in trust for the separate use of the wife of C.; E. became the purchaser at the sheriff's sale, and received a deed from the sheriff, and brought suit,—to which D. and C. and the wife of C. were parties—to obtain a decree vesting in himself all the right, title and interest of D., the trustee, and of the wife of C. in said lot, on the ground that the same was conveyed to D. for the separate use of the wife with the intent to defraud and hinder the creditors of the husband: *held*, that the judgment against C., though conclusive against him as to the items upon which it was found, (and which appeared in the report of a referee confirmed by the court,) was not conclusive as against the other defendants; that they might show that the deficits against C., in the account kept by him as clerk of B. & E., and upon which the judgment against him had been recovered, were caused by the interference of E.; and that forced balances were made by C. at the suggestion of E., and that consequently there was no indebtedness on the part of C. to B. & E. at the date of the deed of May, 1844, to D.

2. Where land, purchased with the money of the husband, is conveyed to a trustee in trust for the separate use of the wife with intent to hinder and defraud the creditors of the husband, it is subject to be sold under executions issued under judgments in favor of such creditors.

*Error to St. Louis Court of Common Pleas.*

This was a suit instituted by Joseph A. Eddy against Henry Baldwin, Julia A. Baldwin his wife, Samuel Willi, and T. G. Stewart. The petition states, substantially, that on the 30th of April, 1852, a judgment was recovered in the St. Louis Court of Common Pleas by Joseph A. Eddy, as surviving partner of Beach & Eddy, against Henry Baldwin, for $5888 23; that an execution issued upon this judgment, which was levied upon all the right, title and interest of Henry Baldwin in the lot and premises in controversy; that Joseph A. Eddy, plaintiff, became the purchaser at the sheriff's sale, and received the sheriff's deed therefor dated September 21st, 1852; that

on the 30th day of May, 1844, one Josephus W. Hall conveyed the lot in question to the defendant Willi, in trust, for the sole benefit, use and advantage of Julia A. Baldwin, for the consideration of $3850 ; that on said 30th of May, 1844, and for many years previously, said Henry Baldwin was and ever since has been wholly insolvent ; that, at the date of said deed to Willi, he was largely indebted to the firm of Beach & Eddy ; that for this indebtedness the said judgment of April 30th, 1852 was obtained ; that, at the time of the marriage, said Julia had no separate estate, nor has she since acquired any by descent, devise, gift or otherwise ; that the said consideration of $3850 was wholly furnished out of moneys belonging to Henry Baldwin ; that said " Henry and Julia A. Baldwin, contriving and confederating together for the purpose of defrauding and hindering the then existing creditors of said Henry, among whom were said Beach & Eddy, and also the subsequent and future creditors of him, the said Henry, among whom were said Beach & Eddy, from obtaining the payment of their just debts, and in order to conceal from them the property of the said Henry, fraudulently contrived to have the said conveyance from Hall and wife made to defendant Willi in trust, for the separate and exclusive use and benefit of said Julia A. ;" that said Henry and Julia A. took possession of said premises and occupied them until they rented them to defendant Stewart. Plaintiff prayed that the interest, title, claim and estate of the said Willi and of the said Julia A. Baldwin in the lot in controversy be vested by a decree in himself.

Plaintiff, to make out his case, introduced the judgment and execution against Henry Baldwin in favor of Eddy ; also the sheriff's deed to said Eddy. Plaintiff also offered in evidence the bill of particulars accompanying the petition in the case in which that judgment was obtained ; also the report of the referee in that case. The defendants, Julia A. Baldwin and S. Willi, objected to their introduction ; the court admitted the bill of particulars, and so much of the report of the referee as gave the items and the decision of the referee on each item. Some

of these items were of a date prior to the date of the deed of Hall to Willi.

Defendants offered to prove that the plaintiff Joseph A. Eddy, in 1841-2-3-4-5-6-7 and 8, controlled the cash account in the store of Beach & Eddy, and that he had access at all times to the money; that he handled the money frequently; that he controlled Baldwin entirely; that he made him a mere instrument in his own hands in the keeping of the cash accounts; that he kept many memorandums of cash in his own hands, and caused forced balances to be made upon his own suggestion, and that the deficits were occasioned by these irregularities and by Eddy's interference with the cash account. This testimony was ruled out as inadmissible, on the objection of plaintiff.

Defendants also gave in evidence a certificate of discharge of Henry Baldwin from his debts under the general bankrupt law of the United States. The certificate was dated May 2, 1853, and issued out of the district court of the United States for the district of Missouri, and showed that the petition for a discharge was made July 18, 1842, and the discharge decreed September 5, 1843.

The court gave the following instructions to the jury : " 1. If the jury find from the evidence that the consideration of the deed from Hall to Willi was paid by Henry Baldwin out of the moneys in his possession, or out of the earnings of his wife, and the proceeds of the sale of her jewelry by her, and the proceeds of a prize drawn by her in a lottery ; or, if the jury find that said Julia, the wife of said Henry, paid the consideration of said deed to Willi out of her earnings and the proceeds of the sale of her jewelry and the proceeds of a prize drawn by her in a lottery, whilst she was the wife of said Henry ; and if they further find that said deed was made or contrived by said Henry and Julia, or either of them, for the purpose of protecting the property described in said deed from the creditors of said Henry, or of placing said moneys beyond the reach of the creditors of said Henry, or of preventing them from collecting

their just demands against said Henry, or hindering or delaying them in the collection of said demands, then the jury should find that said deed was made or contrived with the intent to hinder, delay or defraud the creditors of said Henry. 2. To ascertain the intent with which said deed was made, the jury should take into consideration all the facts and circumstances in evidence. They should not presume a fraudulent intent without proof thereof. Fraud is not to be presumed, but it may be proved indirectly by such facts and circumstances as satisfy the jury of its existence, as well as by direct proof. The burthen of proving said intent is on the plaintiff. 3. The judgment in favor of Joseph A. Eddy against Henry Baldwin, and the referee's report therein, read in evidence, are conclusive proof of the indebtedness of said Baldwin to said Eddy to the amount of said judgment, and that the same is founded upon the items of indebtedness set forth in said report, and as against this indebtedness the certificate of discharge in bankruptcy of said Baldwin is no discharge of him from any of said items."

The following instructions asked by defendants, Julia A. Baldwin and Samuel Willi, were refused: " 1. The earnings of Mrs. Baldwin and her personal savings, as well as the proceeds of a prize drawn by her in a lottery, if her husband allowed her to apply the same to her own use, vest in and belong to her in equity, as against the claim of her husband thereto. 2. If the consideration of said deed of Hall to Willi, trustee of Julia A. Baldwin, was paid by Julia out of the proceeds of her own earnings and savings, and a prize in a lottery drawn by her, then such consideration was not paid by money belonging to Henry Baldwin."

The jury found the following verdict upon issues framed and presented to them by the court:

" 1. As to the first issue, we, the jury, find in the affirmative, that the judgment in favor of Joseph A. Eddy, surviving partner of Beach & Eddy, against Henry Baldwin, was rendered and an execution issued thereon, and under it the property described in the deed to Willi was levied upon and sold

to the plaintiff, and a deed thereof made to him, as said facts are alleged in the petition.

"2. As to the second issue, we, the jury, find that, when the deed of Hall to Willi, named in the petition, was made and delivered, Henry Baldwin, the defendant, was insolvent, and that he was indebted to Lewis Beach and Joseph A. Eddy.

"3. As to the third issue, we, the jury, find that the consideration of said deed to Willi was paid to Hall by said Willi and Dr. Brown with money furnished to them for the purpose by Julia A. Baldwin, out of funds in her hands at the time, derived partly from her earnings as a school teacher, whilst she was the wife of said Henry Baldwin, partly from the proceeds of her jewelry sold by her during the time she was the wife of said Henry, and partly from the proceeds of a prize drawn in the lottery on a ticket bought by said Henry with his own money, and given to said Julia by him after it had drawn a prize of eight thousand dollars.

"4. As to the fourth issue, we, the jury, find that said deed of Hall to Willi was made or contrived with the intent to hinder, delay or defraud the creditors of said Henry Baldwin; and that said Henry was, and that said Julia was, privy to said intent.

"5. As to the fifth issue, we, the jury, find that the consideration for said deed to Willi was paid as stated in our finding of the third.

"6. As to the sixth issue, we, the jury, find that the consideration for said deed to Willi was paid as stated in our finding of the third issue; and that seventeen hundred and twenty dollars thereof were so paid from the funds derived from her earnings as school teacher, whilst Julia was the wife of said Henry; and one hundred and thirty dollars from the proceeds of the sale of her jewelry, during said time; and two thousand dollars from the proceeds of the prize, as found by us on the third issue."

A motion for a new trial, made by Julia A. Baldwin and Willi, having been overruled, they moved also in arrest of judgment, which motion was also overruled, and a decree was ren-

dered vesting in plaintiff all the right, title and interest of Henry Baldwin, Julia A. Baldwin, and her trustee, Samuel Willi, in and to the lot in controversy. It was further ordered that plaintiff recover and have possession thereof, and to that end a writ of possession was awarded. Exceptions were duly taken.

*T. Polk* and *B. A. Hill*, for plaintiffs in error, cited 2 Story's Eq. §§ 1377, 1380 ; Gentry v. McReynold, 12 Mo. 513 ; Curtis v. Price, 12 Ves. 89, 103 ; Arundell v. Phipps, 10 Ves. 140 ; 1 Roper on Husband and Wife, 325 ; 1 Swanst. 106 ; Townshend v. Windham, 2 Ves. sr. 11 ; Kidney v. Cropmaker, 12 Ves. 136 ; Montague v. Lord Sandwich, 12 Ves. 148 ; Stephens v. Olive, 2 Bro. C. Cas. 90 ; Story's Eq. § 361-2-5 ; Foggord v. Tolcott, 2 Edw. Ch. 628 ; Parish v. Rhodes, Wright, 339 ; Westbrook v. Comstock, Walker's Ch. 314 ; Whitesides v. Davis, 7 Dana, 101.

*Todd, Krum & Harding*,. for respondents, cited 11 Wheat. 210 ; Bailey, 415 ; 1 Monroe, 44 ; 2 Hill & Cowen's Notes, 950, 960 ; 1 Greenl. Ev. 524, 528, 523 ; 14 Mo, 597 ; 7 Mo. 125 ; 2 S. & R. 275 ; 17 Mo. 376 ; R. C. 1855, art. 3, secs. 8, 9 ; Clancy on Rights 3, 440 ; 8 Mass. 229 ; 9 Mo. 628 ; 12 Mo. 169, 533 ; 18 Mo. 378 ; 19 Mo. 340 ; 7 Mo. 452 ; 2 Roper on law of Husband and Wife, 137–8–9, ch. 7 ; 2 Kent's Com. 139 ; 2 Story's Eq. § 1403–4.

LEONARD, Judge, delivered the opinion of the court.

We have come to the conclusion that the court erred in excluding the proof, offered through the witness Ladd, of Eddy's control over and interference with Baldwin in reference to the cash account kept by the latter as the clerk of Beach & Eddy. The judgment against Baldwin, which was founded mainly on the items in this account, may conclude him as to the nature and dates of the several items of indebtedness on which the recovery was had ; but does it also conclude the other defendants here to the same extent, so as to preclude them from

showing, for the protection of their own rights, that no such indebtedness existed at the times indicated ?  We are not aware of, nor have we been referred to, any case to this effect; and, upon principle, we think it can not be so.  It is of course conclusive against the world of the party's indebtedness at the time of the recovery ; but we do not see how it can be held conclusive against a grantee in an alleged fraudulent conveyance of such indebtedness at a time long anterior to the judgment, for the purpose of impeaching the conveyance as fraudulent by reason of the then existing indebtedness of the grantee.  The principal matter in this case to make out the alleged fraud, was the husband's indebtedness at the date of Hall's deed of May, 1844, to Willi, for the use of the wife ; and, as the husband's discharge in bankruptcy, in 1843, extinguished all his general prior indebtedness, it became material to show that the several items of the judgment indebtedness existed before the date of the deed, which was several years before the judgment, and that they were also of such a character as exempted them from the operation of the bankrupt's certificate.  We do not know that the rejected proof would have weighed much with the jury against the fair presumption of such indebtedness furnished by the recovery, or, indeed, that it ought to have had much weight ; but yet we think it was competent evidence, and that therefore the court erred when they excluded it.

Passing from this point to the substantial merits of the case, we remark, that this suit is not to subject the lot to the payment of a debt, but to try the alleged fraud in equity, in order, if it be found, that it may be so decreed, and the proper title passed to the purchaser, and the matter thereby concluded, once for all, instead of being left open for interminable litigation at law. And here the first question that meets us is, supposing the settlement to have been fraudulent in fact against the husband's creditors, whether the lot was subject to an execution sale for the payment of his debts ?  The objection is, that the lot never belonged to the husband, and that, of course, he never made any disposition of it to be adjudged fraudulent and void as against

his creditors. In Rankin v. Harper, (ante p. 579,) where a father had purchased land in the name of his son to defraud his creditors, we determined that the use resulted to the father for the benefit of his creditors, and that the land was subject to be sold under execution as the father's property, and we refer to our opinion in that case for the grounds of our decision. It is true that in that case there was no *expressed use*, and so the trust would of course have resulted to the party who paid the price had the deed been taken in the name of a stranger ; but it was there insisted that the purchase being in the name of a child, it was an advancement, and not a resulting use ; but we held that, although this would have been so, had it been an honest transaction, yet, as the purpose was to defraud creditors, the presumption in favor of an advancement was repelled, and the use resulted to the debtor in favor of his creditors. In other words, it was decided that a purchase by a debtor with his own funds in the name of another, whether child or stranger, to defraud creditors, was a fraudulent disposition of his property, and that the purchased land was subject to sale under our execution laws. The present case, however, is distinguished from that case, by the fact that here the use is expressly declared in favor of the wife, and therefore it is said that, according to the principles of law, there can be no resulting trust. We think, however, that ought not to be allowed to take the case out of the rule there established. The great principle on which the statute against fraudulent conveyances stands is, that a man shall not dispose of his property so as to have the enjoyment of it himself, and yet keep his creditors at arm's length ; and all the schemes that are from time to time cunningly devised by men for that purpose, are met and rendered ineffectual by the courts, as far as it is possible to do so consistently with the principles of the law. We see no legal reason why, if, in the one case, the legal presumption that the purchase was an advancement for a child was properly met by proof that it was a trick to defraud creditors, the same evidence should not be allowed in the present case to counteract

the *expressed* use, and create a resulting trust to the debtor for the benefit of his creditors. If the property was bought with his funds, and the form of the conveyance was a mere contrivance of the parties to secure the property against his creditors, it of course ought not to prevail under any system of law, and we think the principles of our own law, as they now stand, are sufficient to answer the purposes of justice in this particular.

The proceeds of the lottery ticket, and of the wife's jewelry and industry, belonged to the husband; and, if they were invested in the purchase of the lot, it must, as against the husband's creditors, no matter how it might be as against himself and mere volunteers be considered as a voluntary post-nuptial settlement. According to the doctrine of some of the cases, (Reade v. Livingston, 3 Johns. Ch. R. 500,) if the party be at all indebted at the time, the transaction is void as to existing creditors as a sheer matter of law; while, according to others, (Sexton v. Wheaton, 8 Wheat. 229,) it can not be impeached upon that ground only; but the presumption of fraud arising from the fact of indebtedness may be repelled by contrary proof. The present case, however, was put to the jury on the ground that the purchase of the lot, in the name of the trustee, was intentionally contrived between the parties—husband and wife—to defraud creditors; and it is upon this ground that we have considered the property as subject to an execution sale for the payment of the husband's debts. The question has not been raised here whether any indebtedness on the part of the husband will annul the settlement in favor of existing creditors, and we presume it will not be made in the future trial of the case; and so we are not now called upon to express any opinion upon that point. The judgment is reversed and the cause remanded.