SLATTERY v. JONES *et al.;* THE GERMAN SAVINGS INSTITUTION, *Appellant.*

1. **Judgment**: LIEN: FRAUDULENT CONVEYANCE. A judgment against a debtor is a lien upon real estate in the hands of his fraudulent grantee and may be enforced against it by execution.

2. ———— : ———— : SUBSEQUENT ATTACHMENT AND LEVY. The lien of such judgment is superior to and cannot be displaced by that of an attachment and levy thereunder on the same property, such attachment being subsequent to the rendition of the judgment but prior to the levy of execution under it.

3. **Execution, Against Land**: DORMANCY. Dormancy cannot be affirmed of an execution in regard to a sale of land. Even agreements to postpone the issuance of executions against land will have no prejudicial effects on the rights of creditors, who rely upon the judgment lien and not upon the execution lien, as is the case where personal property is to be sold.

*Appeal from St. Louis City Circuit Court.*—HON. A. M. THAYER, Judge.

REVERSED AND REMANDED.

*Leo Rassieur* and *Dexter Tiffany* for appellant.

(1) A judgment is a lien on property fraudulently conveyed prior to its rendition. In most states where such property can be levied upon and sold under execution it is so held and the weight of authority establishes this view. Bump on Fraud. Con. [3 Ed.] 474. Judgment held a lien in *McKee v. Gilchrist*, 3 Watt. 230 ; *Miner v. Warner*, 2 Grant, 448 ; *Jacoby's appeal*, 67 Penn. 434 ; *Manhatten Co. v. Evertson*, 6 Paige, 457 ; *Eastman v. Schettler*, 13 Wis. 324.; *Chautauqua Co. v. Risley*, 19 N. Y. 369 ; *Hubbs v. Bancroft*, 4 Ind. 388 ; *Scoutin v. Bender*, 3 How. Pr. 185 ; *Thomasen v. Neiley*, 50 Miss. 313. (2) A conveyance in frand of creditors is void absolutely, not voidable merely ; but as to creditors is as if it had never been. *Allen v. Berry*, 50 Mo. 90 ; *Howe v. Wallace*, 12 Mo. 169 ; *Carter v. Castleberry*, 5 Ala. 277 ; *Gentry v. Robinson*, 55 Mo. 260, 262 ; *Hubbs v. Bancroft*, 4 Ind. 388 ; *Jacoby's appeal, supra ;* Wait on Fraud. Conv. 87, 106 ; R. S., sec. 2497. (3) In Missouri a judgment is a lien on land fraudulently conveyed prior to its. rendition by express statutes as interpreted by this court. *Bobb v. Woodward*, 50 Mo. 101. To same effect are *Ryland v. Cullison*, 54 Mo. 513 ; *Zoll v. Soper*, 75 Mo. 460 ; *Lionberger v. Baker*, 88 Mo. 455, and many others ; R. S. secs. 2730, 2731, 2767.

*Martin, Laughlin & Kern* and *Smith & Harrison* for respondent.

(1) The seizure of the property in dispute under respondent's attachment was a direct and legal assertion by plaintiff of his right to avoid the fraudulent conveyance theretofore made by John Jones. The attachment, as soon as levied, became a specific lien with the

same effect as if no conveyance had been made. *McKinney v. Bank*, 104 Ill. 180; Drake on Att. [6 Ed.] sec. 239; *Lionberger v. Baker*, 88 Mo. 447, and cases cited; Freeman on Judg. [3 Ed.] sec. 350; *In re Estes*, 3 Fed. Rep. 134, and cases cited. (2) The levy of respondent's attachment gave him such a specific lien on the property attached, that the title acquired by him, at the sale had under his execution, related back to the time of such levy. *Lackey v. Seibert*, 23 Mo. 85; *Huxley v. Harrold*, 62 Mo. 516, 521; *Hall v. Stephens*, 65 Mo. 670. (3) A judgment is not a lien on real estate which has, prior to the rendition of such judgment, been conveyed by the debtor in fraud of his creditors. *Rappleye v. Bank*, 93 Ill. 396; *Miller v. Sherry*, 69 U. S. [2 Wall.] 237, 249; *In re Estes*, 3 Fed. Rep. 134; s. c., 6 Sawyer, 459; *In re Estes*, 5 Fed. Rep. 60; s. c., 12 Cent. Law Jour. 135; *Howland v. Knox*, 59 Iowa, 46; *Lyon v. Robbins*, 46 Ill. 279; Freeman on Judg. [3 Ed.] sec. 350; Bump on Fraud. Con. [3 Ed.] 571, and cases cited in note 4; *Wood v. Wright*, 4 Fed. Rep. 511; *Dargan v. Waring*, 11 Ala. 988; *Den v. Hill*, 1 Hayw. 85. (4) A conveyance in fraud of creditors is voidable merely and not void. *Gutzweiler v. Lackman*, 23 Mo. 168; *Bobb v. Woodward*, 50 Mo. 95; *Jacobs v. Smith*, 89 Mo. 673; Wait on Fraud. Con., sec. 445, pp. 593, 597; Bump on Fraud. Con. [3 Ed.] 444, 458, 462, 464, 465, 468, 491, 492, and cases there cited; *Parker v. Freeman*, 2 Tenn. Ch. 612.

SHERWOOD, J.—This is an equitable proceeding, having for its object the determination of the question whether the plaintiff Slattery or the defendant, The German Savings Institution, has the better title to the property in controversy. Briefly told, the facts in the case are these: "John Jones, being insolvent and largely indebted, for the purpose of defrauding his creditors, conveyed his property to his wife's trustee in May, 1883; shortly thereafter, the German Savings

Institution, one of Jones' creditors, brought suit on a debt contracted antecedent to said transfer, and recovered judgment thereon on January 8, 1884, on which judgment execution was duly issued February 4, 1884, and on that date placed in the hands of the sheriff, returnable to the April term ; on this execution, a levy was duly made, on March 11, 1884, upon the property thus fraudulently conveyed, and the same was duly advertised and sold by the sheriff to the German Savings Institution, and a deed given and recorded April 19, 1884, and return made in due course to said April term.   The German Savings Institution then brought suit with diligence, and had the conveyances of Jones declared fraudulent and void as to creditors.

Subsequent to the obtaining of the judgment of January 8, 1884, in favor of said German Savings Institution, and on March 10, 1884, one day prior to the levy of execution thereunder, the plaintiff Slattery brought an attachment and levied the same on the same property, filed notice of his attachment on that day and followed it by judgment, execution, sale and deed recorded in June, 1884, and now claims that the subsequent levy of its attachment gave it a better lien upon the land than the German Savings Institution acquired by its prior judgment, followed in due course by execution and sale and deed.

The court below held that a judgment is not a lien upon property fraudulently conveyed prior to its rendition ; that such a transfer is not void, but only voidable as against creditors ; that the levy of an attachment created a superior lien to the supposed lien of a judgment thus rendered, and decreed the title to be in the plaintiff.   Our statute declares that every conveyance of land made with intent to defraud creditors, etc., "shall be from henceforth deemed and taken as against said creditors and purchasers * * * to be clearly and utterly void."   R. S., sec. 2497.

Further statutory provisions bearing on the, point in hand are as follows:

Sec. 2730: "Judgments and decrees rendered by any court of record shall be a lien on the real estate of the person against whom they are rendered situate in the county in which the court is held."

Sec. 2731: "Such liens shall commence on the day of rendition of the judgment and shall continue for three years."

Sec. 2767: "The term 'real estate' as used in this chapter shall be construed to include all estate and interest in lands, tenements and hereditaments liable to be sold upon execution."

Sec. 2361: "No execution, prior to the levy thereof, shall be a lien on any * * * real estate to which the lien of the judgment * * * does not extend."

Sec. 2354: "The following property shall be liable to be seized and sold upon attachment and execution issued from any court of record: * * * fifth, all real estate, whereof the defendant, or any person for his use, was seized, in law or equity, at the time of the issue and levy of the attachment, or rendition of the judgment, * * * whereon execution was issued," etc.

In his work on Executions, Mr. Freeman observes: "Whoever goes out with an execution to seek the fruits of his judgment is too apt to find that fraud has forestalled him. It then becomes his business to pursue those fruits, wherever fraud has taken them; to wrest them from the possession of his adversary, wherever they may be found, and to prepare himself to show that the refuge whence he has wrested them is still the refuge of fraud. In many instances, the aid of equity is invoked. But generally this is unnecessary; for a, transfer made to hinder, delay or defraud creditors, while as between the parties it conveys the title, has, as against a creditor proceeding under execution, no such

effect.   As against the fraudulent transferee, the cred-
itor may seize the property, whether real or personal, as
that of the fraudulent vendor, and may proceed to sell
it under execution.   The title transferred by such sale
is not a mere equity—not the right to control the legal
title, and have the fraudulent transfer vacated by some
appropriate proceeding; it is the legal title itself,
against which the fraudulent transfer is no transfer at
all.'' Freeman on Executions, sec. 136.

And though the learned author states that if land
be bought with the money of the debtor, and the title
taken in the name of another, that in such case the title
cannot be reached by execution, but resort must be had
to a court of equity ; yet he admits that the rule is
different in those states where statutes have been
enacted which enable creditors to reach the legal title
at law, citing, among others, the cases of *Dunicca v.
Coy*, 24 Mo. 167; *Rankin v. Harper*, 23 Mo. 579 ;
*Eddy v. Baldwin*, 23 Mo. 588, where that doctrine is
announced as the law of this state.   In *Rankin v. Har-
per, supra*, LEONARD, J., said : '' Our law subjects all
that a man has as property to the payment of his debts,
and we know of no reason why the trust that results to
him who pays the purchase money   *   *   *   should not
be allowed to result to the debtor for the benefit of his
creditors, so as to afford them the speedy and easy
remedy of an execution sale.''

In *Bobb v. Woodward*, 50 Mo. 101, it is declared
that '' it has become settled law in Missouri, that upon
lands held by a third person in fraud of creditors for
the benefit of the debtor, or fraudulently purchased
with money of the debtor and conveyed to his family,
there is a resulting trust to the debtor for the benefit of
the creditors, which may be sold upon execution.
*   *   *   It is held to be such an equitable estate as is
comprehended in the language of the statute, which
subjects to sale upon execution ' all real estate whereof
the defendant or any person for his use, was seized in

law or in equity.' "   To this effect are all the authorities in this state.

An author of recognized authority says :   "If the creditors obtain judgment against the debtor after the transfer, they acquire liens upon his property wherever the same are given by law, according to the dates of their respective judgments, in the same manner precisely as if no transfer had been made ; for the transfer is a nullity as against them, and the legal, as well as the equitable, title remains in the debtor for the purpose of satisfying debts."   Bump on Fraud. Con. [3 Ed.] 474.   This position is abundantly sustained by the authorities. *Jacoby's appeal*, 67 Penn. 434 ; *Manhattan Co. v. Evertson*, 6 Paige, 457 ;   *Mulford v. Peterson*, 35 N. J. L. 127, and cas. cit.; *Eastman v. Schettler*, 13 Wis. 324 ; *Thomas v. Walker*, 6 Humph. [Tenn.] 93 ; *Thomason v. Neiley*, 50 Miss. 513 ; *Scouten v. Bender*, 3 How. Pr. 185 ; *McKee v. Gilchrist*, 3 Watts, 230.

I find no case in this court where the point has been directly decided in accordance with the cases just cited ; but such a decision necessarily results from our statutes and adjudications already quoted.   If, as against creditors, the fraudulent conveyance of the debtor is a nullity, a dead letter, "clearly and utterly void," as the statute puts it, how is it possible for such a conveyance, even though it be prior in point of time, to balk a creditor's judgment of its customary and binding force and operation ?   If our statutes are to receive the meaning which their plain language imports, I cannot see how the attitude of this case differs from that of one where the fraudulent conveyance is made subsequently to the recovery of judgment.

It is said, however, that if a conveyance be made by the fraudulent grantee, it would pass a good title to an innocent purchaser, as against the alleged judgment lien ; and that this circumstance shows that the judgment cannot be a lien against the property.   I cannot

admit the force of this argument, because similar reasoning would deny the existence of a vendor's or a vendee's lien, if the land bound thereby were conveyed to an innocent purchaser. But suppose the purchasers were not innocent, would the alleged judgment lien bind *them ?* Can it be possible that the lien of a judgment is dependent upon the fact whether the last purchaser be innocent or fraudulent ? The considerations which allow the fraudulent grantee of a fraudulent grantor to convey a good title to a *bona-fide* purchaser, are considerations which exclusively belong to our registry acts, and have no bearing on the question of the existence and validity of the judgment lien.

All that the last purchaser, innocent, of course, has to look to, is that the title of his immediate grantor is clear upon the record ; he is not bound to search for judgment liens occurring subsequently to the time of his grantor's acquired title. Moreover, but for statutory provisions, requiring that an abstract of the land attached be filed in the recorder's office, it is to the last degree doubtful whether the property of A, fraudulently conveyed to B, and afterwards attached as that of A, would be affected by the attachment lien, when subsequently conveyed to innocent purchaser C.

And, if the debtor, by reason of the fraudulent conveyance, has no interest to which the lien of a subsequently rendered judgment could attach, it is very difficult to see *what* interest would be left in him which can be seized by the subsequent levy of the writ of attachment. It appears to me that the same argument which defeats the one, also defeats the other. If there be nothing remaining for the judgment lien to fasten on, how will the attachment lien fare any better ? The fact that the judgment lien is a general one, and the attachment lien a specific one, cannot alter the case or vary the result, since, in either instance, there must be *something, and that something an interest of the debtor in the real estate*, upon which the general binding force of

the judgment, or the specific force of the attachment writ can operate.

Now, all the cases in this state show that the debtor, in instances similar to the one at bar, has a *leviable interest* in the fraudulently conveyed property, and wherever this is the case, "the right to issue execution and to satisfy it by the sale of the real estate, ordinarily implies that the judgment is a lien upon such real property," and "because the lien of a judgment is inseparably associated with  *  *  *  the right to take lands in execution, it follows that there can be no lien except upon such judgments as the plaintiff is entitled to satisfy by levy upon the lands of the debtor." Freeman on Judgments, secs. 350, 340. Indeed, it is impossible to conceive of a judgment capable of being enforced against real property, upon which it is not a lien. *Stadler v. Allen*, 44 Iowa, 198, and cas. cit.

In this case, it will scarcely be denied that the judgment of the appealing defendant was capable of being enforced by execution against the property of Jones, while it remained in the hands of his fraudulent grantee ; to deny this, would be to deny and to annul the force and effect of our statutes on this subject, and numerous decisions based thereon. The only question here at issue is one of priority between the judgment lien and that of the attachment. But, according to the premises, if the judgment was capable of enforcement, then it must have been a lien. The capability of enforcement being established presupposes the existence of a lien which is the basis of such capability.

Here then, we have first, a fraudulent conveyance of real estate, and for that reason, *void ;* second, such real estate liable to be sold upon execution as that of the fraudulent grantor and debtor ; third, a judgment rendered against such debtor, which the statute declares shall bind with its lien all real estate, etc., liable to be sold upon execution. When all these things are taken into consideration, it seems to me that there is no room.

left to doubt that the judgment of the German Savings Institution created upon the premises in controversy a lien, which must be regarded and declared as the elder legal lien ; one which cannot be displaced by any junior lien whatsoever. Freeman on Executions, sec. 196 ; *Wakeman v. Grover*, 4 Paige, 23 ; *Scouten v. Bender*, 3 How. Pr. 185. Nor must it be overlooked that at the time the attachment of the plaintiff was levied, there was in the hands of the sheriff an execution issued on the judgment of the appealing defendant.

This execution, according to the terms of the statute (section 2361, *supra*), was a lien, also, upon the property in controversy ; and it is by no means certain that a levy of the execution was necessary in order to a valid sale of that property. Freeman on Executions, sec. 280. This court has confessed that the law is silent as to what acts are necessary to constitute a levy on real estate. *Duncan v. Matney*, 29 Mo. 368. When the sale was made under this execution, and a deed made to the purchaser, the deed related to the date of the judgment (*Union Bank v. Manard*, 51 Mo. 548), and cut out all intervening liens and incumbrances. *Durrett v. Hulse*, 67 Mo. 201.

In relation to the delivery of the execution to the sheriff to hold for further orders, no importance is to be attached to it. The land was sold at the return term of the writ, and the delay was satisfactorily explained by counsel. But even had it not been thus explained, there exists no reason why the rights of the defendant should be postponed or subordinated to those of the plaintiff. There was no hindrance of the plaintiff from attaching the property. There is a very wide distinction in this regard between liens upon real, and those upon personal, property. *Ensworth v. King*, 50 Mo. 479 ; Bump on Fraud. Conv. 571. Dormancy cannot be affirmed of an execution in regard to a sale of *land*. Even agreements to postpone the issuance of execution where land is to

be the subject of sale, will have no prejudicial effects on the rights of the creditor, who relies upon his judgment lien, and not upon his execution lien, as is the case where personal property is to be sold. Freeman on Judgments, sec. 383.

In conclusion, it has not been thought necessary to review, in detail, the authorities which are opposed to the views here announced, as to a judgment being a lien upon property previously transferred to a fraudulent grantee, for the reason that those views are thought to be best supported by reason and authority, and that they are in consonance with our own statutes and adjudications in relation to matters similar to those involved in this controversy.

The result is that the judgment must be reversed and the cause remanded. All concur.